CLARKE VS. THE LINCOLN LUMBER COMPANY.

*February 4 — February 19, 1884.*

*Illegal contracts: Corporations: Recovery of money paid by subscriber for stock unlawfully issued.*

Under the statute (sec. 1753, R. S., as amended by ch. 93, Laws of 1881) prohibiting the issue of stock by any corporation at less than its par value and invalidating all stock so issued, a subscriber for stock under an agreement that it shall be issued to him at less than its par value, though his act is not expressly prohibited, is *in pari delicto* with the corporation and cannot maintain any action upon the contract or recover back money paid under it. Cases in which the contract was not prohibited by law, but was void because of the incapacity of a party or because not made or evidenced in the manner prescribed, and in which the contract was declared void by law *as to one party* in order to protect the other against injustice and oppression, distinguished.

APPEAL from the Circuit Court for *Lincoln* County.

The case is thus stated by Mr. Justice TAYLOR:

" Action to recover the sum of $4,650, which the plaintiff alleges he paid to the defendant company upon a void contract for the purchase of the capital stock of said company, of the par value of $10,000. The complaint, in substance, alleges that the plaintiff subscribed for $10,000 of the capital stock of the company upon the agreement between himself and the company that he should pay therefor the sum of $5,000 only, and that as a further consideration for his subscription he should be appointed general manager of the company, at a salary of $2,000 per annum; that on April 13, 1883, said stock was duly issued to the plaintiff and duly transferred on the books of the company to him; that on the day of the issuing of said stock he paid the company as part payment therefor the sum of $2,580, and thereafter, and before the commencement of this action, he paid on said contract further sums, amounting in all to the sum of $959.17; that he had paid a further sum for salary, which it

is alleged was agreed to be applied to the payment for said stock, which said sums, together with the amount unpaid on a promissory note given by him to said company in part payment for said stock, in all amounted to the sum of $4,650. The complaint then alleges 'that the stock so issued to the plaintiff was wholly void and valueless;' 'that the money had and received of the plaintiff by the company was without other or further consideration than the stock of said company before mentioned;' and further alleges a tender back to said company of the certificates of the stock issued to him, a demand of payment of the money so paid to said company on the contract for said stock, and a refusal of the company to receive such stock certificates, or to repay him the said sum of money or any part thereof; and demands judgment for the amount paid to the company, with interest."

The defendant appealed from an order overruling a general demurrer to the complaint.

For the appellant there was a brief by *Silverthorn, Hurley & Ryan,* and oral argument by *Mr. Hurley.*

For the respondent the cause was submitted on the brief of *James & Crosby.* They contended, *inter alia,* that, the stock being void, the plaintiff can recover the money paid therefor, as for a failure of the consideration. *Paul v. Kenosha,* 22 Wis., 266; *Lawton v. Howe,* 14 id., 241; *Ela v. Am. M. U. Exp. Co.,* 29 id., 617; *Nutting v. McCutcheon,* 5 Minn., 382; *Jackson v. Town of Jacksonport,* 56 Wis., 310. The contract set out in the complaint is executory. The statute does not prohibit the *purchase* of stock at less than the face. Had it done so, neither party could recover. See *M., W. & M. P. R. Co. v. W. & P. P. R. Co.,* 7 Wis., 59; *N. W. U. Packet Co. v. Shaw,* 37 id., 655. This case is to be distinguished from those in which money is paid under a mistake of law. See *Hurd v. Hall,* 12 Wis., 125; *Lawton v. Howe,* 14 id., 241. Here the plaintiff paid his money on

a consideration which has wholly failed, or is void for ille-
gality. *Brandeis v. Neustadtl*, 13 Wis., 154; *Wells v. Am.
Exp. Co.*, 49 id., 224; *Tollensen v. Gunderson*, 1 id., 113;
*Cross v. Bell*, 34 N. H., 83; *Leonard v. Canton*, 35 Miss.,
189; *Paige v. Einstein*, 7 Jones Law (N. C.), 147; *Richards
v. Allen*, 17 Me., 296; *Brown v. Timmany*, 20 Ohio, 81;
*Pepper v. Haight*, 20 Barb., 429; *Spring v. Coffin*, 10 Mass.,
31. The act was illegal only as to the party receiving the
money. *Adams v. Goodnow*, 101 Mass., 81; *Laporte v.
Bacon*, 48 Vt., 176.

TAYLOR, J. Upon the argument of the case in this court,
it is conceded by the counsel for the respondent that his
ground of action is based upon the fact that under the pro-
visions of sec. 1753, R. S., the contract made between him-
self and the company was void, because the corporation
issued the stock to him upon an agreement to receive there-
for less than its par value, viz., fifty per cent. of such value.
The counsel for the appellant assents to this view of the
case, if the facts stated show that such was the contract,
but claim that the facts stated do not show that the con-
tract was in contravention of said section. It is said by the
counsel for the appellant that the consideration for the
$10,000 of stock was not only the $5,000 in money agreed
to be paid, but the further consideration that the plaintiff
would serve the company as general manager, secretary, and
treasurer for the sum of $2,000 salary per annum, and for
aught that appears in the complaint such services of the
plaintiff might be worth a much greater sum than the salary
of $2,000, and might therefore make the consideration agreed
to be paid for the stock $10,000.

We are unable to see the force of this argument. On the
contrary, we think it is apparent that the condition to make
the plaintiff manager, etc., at a salary of $2,000 per annum
was an inducement to the plaintiff to take the stock at fifty

cents on the dollar. This is made apparent from the allegation in the complaint that shortly before the contract was made the plaintiff offered to subscribe for the stock at forty per cent. of the par value, which offer was rejected by the company, and that immediately after the rejection of such offer of forty cents the plaintiff made the offer that if he was made the general manager of the company he would subscribe for $10,000 of the stock of the company and pay fifty per cent. of its par value; and this proposition was immediately accepted by the company. It is evident from the whole complaint that it was not understood by the parties that the plaintiff was to give any greater consideration for the stock than the fifty cents on the dollar.

Upon this understanding of the contract set out in the complaint there can be no doubt but the contract was a violation of the section of the statute above cited, and void. Being void by statute, it is equally clear that neither party could maintain an action founded upon such contract to enforce the same, nor could one party recover damages from the other for a refusal to perform it on his part. This has been so often determined in this and in other courts that it needs no further discussion. *Smith v. Finch*, 8 Wis., 245; *Blanchard v. McDougal*, 6 Wis., 167; *Swartzer v. Gillett*, 2 Pin., 238, 239; *Moore v. Kendall*, id., 99; *Brandeis v. Neustadtl*, 13 Wis., 142; *Knoll v. Harvey*, 19 Wis., 99; *Tiernan v. Gibney*, 24 Wis., 190; *M., W. & M. P. R. Co. v. W. & P. P. R. Co.*, 7 Wis., 59; *Melchoir v. McCarty*, 31 Wis., 252; *Troewert v. Decker*, 51 Wis., 46; *Ætna Ins. Co. v. Harvey*, 11 Wis., 394; *De Forth v. W. & M. R. R. Co.*, 52 Wis., 320; *In re Comstock*, 3 Sawyer, 218; *Bank v. Merrick*, 14 Mass., 324; *Russell v. De Grand*, 15 Mass., 37; *Wheeler v. Russell*, 17 Mass., 280; *White v. Bank*, 22 Pick., 181; *Belding v. Pitkin*, 2 Caines, 149; *Shiffner v. Gordon*, 12 East, 304; *Noel v. Drake*, 28 Kan., 265; *Bank of U. S. v. Owens*, 2 Pet., 538; *Harris v. Runnels*, 12 How., 83; *Williams v.*

*Cheney*, 3 Gray, 222; *Roche v. Ladd*, 1 Allen, 441; *Nat. Mut. Ins. Co. v. Pursell*, 10 Allen, 232; *Rising Sun Ins. Co. v. Slaughter*, 20 Ind., 520; *Cin. Mut. H. A. Co. v. Rosenthal*, 55 Ill., 90.

Admitting this to be the law, the learned counsel for the respondent contends that it does not bar his right to recover in this action. He claims he is not seeking to enforce the illegal and void contract, but repudiates it and claims the right to recover what he has paid to the corporation upon such void contract. This presents the real question in the case.

Sec. 1753, R. S. 1878, upon which the respondent relies for the recovery of the money paid to the company, as amended by ch. 93, Laws of 1881, reads as follows: "No corporation shall issue any stock, or certificate of stock, except in consideration of money, or labor, or property, estimated at its true money value, actually received by it, equal to the par value thereof; nor any bonds or other evidence of indebtedness, except for money, labor, or property, estimated at its true money value, actually received by it, equal to seventy-five per cent. of the par value thereof; and all stocks and bonds issued contrary to the provisions of this section, and all stock dividends, or other fictitious increase of the capital stock of any corporation, shall be void: *provided, however*, that any corporation whose stock or bonds have been or shall hereafter be admitted to the stock exchange of Chicago, New York, Boston, or Philadelphia, or of either of said cities, may sell such stock or bonds so admitted at the best price or prices current for the time being obtainable therefor on any of the said exchanges at which the same shall be offered for sale." No question arises under the proviso to the section, as there is no evidence in the case tending to show that the stock in question was ever admitted to the stock exchange of either of the cities mentioned.

The contract for the sale and purchase of the stock was

clearly void under this statute. The statute was a declaration of a public policy, first enacted as ch. 24, Laws of 1874, and is clearly in the interest of public morals, and tends to the protection of those dealing with corporations. Most of the corporations created under the laws of this state have no fund or capital which their creditors can reach, except that derived from the issuance or sale of their stock; and if this law be strictly followed in every case, corporations will not get credit upon the false pretense of having a large paid-up capital, when in fact a small percentage of the par value of the stock issued has ever come into the treasury of the company. The law is undoubtedly a salutary one, and its violation is clearly an illegal act, though no punishment is imposed by the statute for its violation. Without this statute such a contract between the corporation and a stockholder would . be void as to the creditors of the corporation, on the ground of fraud. See Morawetz on Pr. Corp., § 589, and cases cited.

The respondent in his complaint sets out a contract showing a clear violation of the act on the part of the company; and, as every person is presumed to know the law, he shows he entered into the contract knowing that the contract was a violation of law. Whether the respondent would have been in any better position had he made it to appear from his complaint that he acted in good faith in the belief that the company had the lawful right to make the contract it did make, and that he paid the money to the company under a mistake of law, and that immediately upon his discovery of the fact that the contract was a violation of law he tendered back the stock and claimed the money paid therefor, we need not determine in this case, as no such case is made by the complaint. Upon the case as made by the complaint, the respondent and the company are *in pari delicto*, both violators of the law, and no action in favor of either which grows directly out of the illegal contract can be maintained.

It does not follow that because a contract is void, money paid under it can be recovered back by the payor in all cases.

The cases cited by the learned counsel for the respondent, in which the court has held that money paid upon a void contract may be recovered back by the payor, are cases either where the contract itself is not prohibited by law but is declared to be void because not made or evidenced in the manner prescribed by law, or where the contract is declared void by law as to one party in order to protect the other against injustice and oppression. *Brandeis v. Neustadtl*, 13 Wis., 142; *Tollensen v. Gunderson*, 1 Wis., 113; and *Thomas v. Sowards*, 25 Wis., 631, are cases of the first class. *Wood v. Lake*, 13 Wis., 84; *Gill v. Rice*, id., 549; *Dole v. Northrop*, 19 Wis., 249; *Lee v. Peckham*, 17 Wis., 383; *First Nat. Bank v. Plankinton*, 27 Wis., 177, and many others that might be cited, are cases of the second class, arising under the usury laws of this state. In the last case cited the late Chief Justice DIXON says: "It is a familiar doctrine or rule of construction with respect to these laws, supposed to be enacted to protect the weak and necessitous from being overreached and oppressed by the powerful and rich, that both parties are not *participes criminis*, but only the lender can be regarded as the oppressor, and he alone is within the pale of the law. All the penalties of the law are enacted against him, and he alone can be guilty of a violation of it. . . . Hence, the borrower, whatever his knowledge or intention may be, is always regarded as innocent."

There is no force in the argument that the law does not forbid the purchase of the stock of the company at less than its par value, and that therefore the purchaser is not a violator of the law, although he purchases at less than par. The purchaser is the aider and abettor of the corporation which makes the illegal issue, and is equally guilty of a violation of the statute as the corporation which issues the

stock. This court, as well as nearly all other courts, has held that public policy and purity in the administration of justice forbid a court from entertaining an action when the plaintiff's claim arises out of a contract made in violation of a statute, or which is against public policy or morality; and when a party has delivered his property upon such contract to another, or paid his money on it, he cannot maintain an action to recover it back. The reason is that he must necessarily bring the unlawful contract before the court, and base his right of recovery upon it. This case is a fair illustration of the necessity of so doing. Without the allegations in the plaintiff's complaint showing the illegality of the contract between himself and the corporation, he would not state any fact upon which it would be possible to predicate a right of recovery. If the facts stated show a legal contract, then the plaintiff cannot recover, because there has been no violation of it on the part of the corporation. If, therefore, the plaintiff may recover, it is solely on the ground that the payments were made to the corporation upon a contract which is illegal and void, being in contravention of the public policy of the state and in violation of an express provision of law, and that in making such contract and payments he was himself a violator of the law.

The following cases in this court would seem to be conclusive against the plaintiff's right to recover: *Moore v. Kendall*, 2 Pin., 99. In this early case it was held that a sale of property on Sunday was a violation of law; and yet, when the sale and delivery was made on that day, neither party could rescind the contract and recover back the property or purchase money. *Swartzer v. Gillett*, 2 Pin., 238. In this case the court refused to interfere to set aside a conveyance of real estate, which was made by the plaintiff to the defendant to compound a felony. *Melchoir v. McCarty*, 31 Wis., 252. In this case the plaintiff brought his action to recover for liquor sold without a license; and it was held

that the contract was illegal, and no recovery could be had. *Morse v. Ryan*, 26 Wis., 362; *Hill v. Sherwood*, 3 Wis., 343; *Walsh v. Blatchley*, 6 Wis., 422; *Troewert v. Decker*, 51 Wis., 46; *Ætna Ins. Co. v. Harvey*, 11 Wis., 394; *Miller v. Larson*, 19 Wis., 463; *John v. Larson*, 28 Wis., 604; *M., W. & M. P. R. Co. v. W. & P. P. R. Co.*, 7 Wis., 59.

In *Melchoir v. McCarty*, Justice LYON, in the opinion of the court, says: "The general rule of law is that all contracts which are repugnant to justice, or founded upon an immoral consideration, or which are against the general policy of the common law, or contrary to the provisions of any statute, are void; and that if a party claiming a right to recover a debt is obliged to trace his title or right to the debt through any such illegal contract, he cannot recover, because he cannot be allowed to prove the illegal contract as the foundation for his right of recovery. It is quite immaterial whether such illegal contract be *malum in se* or only *malum prohibitum*. In either case the maxim *ex turpi causa non oritur actio* is applicable; and a contract in violation of a statute is void, although the statute fails to provide expressly that contracts made in violation of its provisions shall not be valid. It is sufficient that it is prohibited, and its invalidity follows as a legal consequence." Numerous authorities from the courts of other states are cited to sustain the rule above stated.

The cases of *Miller v. Larson* and *John v. Larson, supra,* were actions of ejectment. In this first case the facts showed that the defendant had gone into possession of the real estate in question under an agreement with the plaintiff which the court held champertous and void, and the plaintiff sought to recover the possession on the ground that such contract was illegal and void. The proofs showed that the plaintiff had the legal title, and that the defendant had the right of possession under the champertous agreement. The late Chief Justice DIXON, in the opinion, says: "The

plaintiff admits the champerty, but insists that it is no defense because the plaintiff sues in disaffirmance of the contract. But it is too late for the plaintiff to disaffirm. The contract has already been executed, if not wholly, at least partially, by both parties. It is only when the contract is executory that a rescission and a recovery are allowed. If it has been partially executed and money or labor expended on one side, and land or property delivered on the other, *in part performance of it,* as to such part performance the condition of the parties is the same as if it had been fully performed. The law will not aid either party to undo what was so unlawfully done; but as a punishment to the plaintiff for his unlawful participation, it refuses him all remedy. It is only when the contract is wholly unexecuted, and by way of anticipating and preventing the wrong, that the party can rescind." The case of *John v. Larson* presented the same question; the only difference being that John was the grantee of Miller. In that case the present Chief Justice says: " The contract, though unlawful, yet having been executed, and the parties to it being *in pari delicto,* the law would leave them as they were, affording a remedy to neither."

In *Ætna Ins. Co. v. Harvey* the company brought an action against Harvey upon a note which he had given for the premium on marine insurance. The policy had been issued and the time of insurance had elapsed without loss. The court held that a recovery could not be had because the company had not complied with the law of this state, which regulated the business of foreign insurance companies doing business in this state.

In *Troewert v. Decker*, the plaintiff brought an action upon a promissory note given by the defendant for borrowed money. The defense was that the money was borrowed and the note given on Sunday, and it was held that the plaintiff could not recover. Justice CASSODAY, who wrote

the opinion in that case, cites and comments upon a large number of cases bearing upon the question involved in that case, and quotes with approval the language of Chief Justice PARKER in *Smith v. Bean*, 15 N. H., 577, as follows: " It is generally said of such illegal contract that it is void. If this were so, and the contract, in the broad sense of the term, were void, no property would pass by it; the vendor might reclaim the property at will, and, being his property, it would be subject to attachment and levy by his creditors, in the same manner as if the attempt to sell had never been made. But this is not what is intended by such phraseology. The transaction being illegal, the law leaves the parties to suffer the consequences of their illegal acts. The contract is void so far as it is attempted to be made the foundation of legal proceedings. The law will not interfere to assist the vendor to recover the price."

It would be a waste of time to quote authorities from other courts to sustain the position that the plaintiff in the case at bar cannot maintain his action to recover back the money paid in part execution of the illegal contract made by him with the company. Most of them are cited and commented upon in the opinions in the cases cited in this court.

The conclusion reached in the case at bar is not in conflict with the case of *N. W. U. Packet Co. v. Shaw*, 37 Wis., 655, and similar cases. The distinction is clearly pointed out by Justice LYON, who says: " The cases have been carefully examined and we think the rule may fairly be deduced from them, that when money has been paid upon an executory agreement, which is free from moral turpitude, and is not prohibited by positive law, but which is invalid by reason of the legal incapacity of a party thereto, otherwise capable of contracting, to enter into that particular agreement, or for want of compliance with some formal requirement of the law (as that a contract shall be in writing, and

the like), the money so paid may, while the agreement remains executory, be recovered back by the party paying it, in an action for money had and received." The distinction between that case and this is so apparent as to need no further comment.

The cases cited by the counsel for respondent in this court, where a recovery has been sustained for money voluntarily paid under a void contract, are all cases of the kind mentioned by Justice LYON in the above citation. The same distinction is pointed out by the learned author Morawetz, in his work on Private Corporations, p. 99, § 102. The complaint fails to state a cause of action, and the demurrer of the defendant should have been sustained.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.